**Supreme Court**

No. 2016-41-Appeal.
(KC 13-878)

Carel Bainum                    :

        v.                      :

Coventry Police Department.     :


NOTICE:   This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Carel Bainum                    :

v.                    :

Coventry Police Department.           :


Present:  Suttell, C.J., Goldberg, Robinson, and Indeglia, JJ.

**O P I N I O N**

**Justice Indeglia, for the Court.**  The plaintiff, Carel Bainum (plaintiff or Bainum), no stranger to the elderly, or the courts for that matter,[1] appeals pro se challenging the motion justice's grant of summary judgment in favor of the defendant, the Coventry Police Department (the department or defendant).  This matter came before the Supreme Court on March 8, 2017, pursuant to an order directing the parties to appear and show cause why this Court should not summarily decide the issues raised by this appeal.  After hearing the parties' arguments and reviewing the parties' memoranda, we conclude that cause has not been shown.  Accordingly, we decide this matter at this time without further briefing or argument.  For the reasons outlined below, we affirm the judgment of the Superior Court.

**I**

**Facts and Travel**

This case stems from Bainum's allegedly unwelcomed visits to the Coventry Health and Rehabilitation Center (the center), a nursing home in Coventry, Rhode Island.  At the crux of plaintiff's case is her relationship with Michael Koczan, now deceased, a former resident in the

---

[1] See Baligian v. Bainum, 983 A.2d 271 (R.I. 2009) (mem.).

center's dementia ward. On or around October 16, 2009, Bainum was visiting then-ninety-seven-year-old Koczan, when Officer Ryan Desisto of the department asked her to leave, at the center's request. The plaintiff, after answering some of the officer's questions, eventually complied with his request and voluntarily departed the home.[2] The plaintiff was also notified at some point[3] by the center's employees that Koczan's daughter, Kristin Wild, sought to halt any future visits from Bainum with Koczan.

Nonetheless, plaintiff, on more than one occasion, subsequently visited Koczan at the center. For example, on January 23, 2010, while disguised with a blonde wig to avoid recognition by the center's staff, she visited Koczan. A staff member eventually recognized Bainum, however, and informed the department of her presence. Because of her contact with Koczan, the department summoned plaintiff to appear at the Kent County District Court on a criminal charge of willful trespass pursuant to G.L. 1956 § 11-44-26. That action was later transferred to the Superior Court, where a jury found Bainum guilty. On September 15, 2010, a trial justice sentenced Bainum.[4] Although plaintiff appealed to this Court, she withdrew her appeal on April 21, 2014.

Following her criminal conviction, on August 15, 2013, plaintiff brought a civil action against the department. In her complaint, she asserted that her willful-trespass conviction was the consequence of two "malicious acts" by defendant: (1) perjured testimony of Officer Desisto during plaintiff's criminal trial; and (2) altered police reports concerning Bainum's visits to the

[2] As a consequence of this visit, the department purportedly mailed plaintiff "a formal no trespass warning."

[3] We note that it is unclear upon which visit Bainum was informed of Wild's demand that she no longer see Koczan. The plaintiff, in her complaint, asserts that she was informed of Wild's request on her visit to the center on January 23, 2010; in department records, however, this fact relates to Bainum's October 2009 visit.

[4] In sentencing, the trial justice issued a one-year suspended sentence with probation and a no-contact order for plaintiff with Koczan.

- 2 -

center. With respect to the false testimony allegation, plaintiff contended that Officer Desisto testified that he gave plaintiff a verbal no-trespass warning on October 16, 2009, at the direction of Earle Lerner, the center's then-administrator. The plaintiff referenced, however, an affidavit she obtained from Lerner just prior to pressing this claim. In it, Lerner contradicted Officer Desisto's testimony by stating that he did not request a no-trespass order or warning for Bainum on October 16 because he wanted to first discuss it with his supervisor, who was absent that day. Additionally, plaintiff alleged that members of the department inappropriately altered Officer Desisto's October 16 police report about Bainum. Based on these assertions, plaintiff submitted that members of the department including Officer Desisto colluded and conspired against her. She further declared that "[t]he perjured testimony of Ryan Desisto, along with other intentional malicious acts by him and other employees of the Coventry Police Department, were intended to harm the Plaintiff, and they did."

On June 4, 2015, defendant moved for summary judgment on the grounds that: (1) plaintiff's criminal conviction defeated her malicious-prosecution claim; (2) collateral estoppel barred any false-arrest claim; (3) plaintiff's conspiracy claim must fail based on its inviable underlying tort claim; and (4) qualified immunity shielded defendant from liability. Before the motion justice, plaintiff asserted that: (1) "this is a case of collusion and conspiracy"; and (2) the doctrine of collateral estoppel is inapplicable because the department was not a party in prior litigation nor was a claim of collusion and conspiracy litigated in a prior case against it.

In his bench decision on September 14, 2015, the motion justice found that plaintiff's complaint failed as a matter of law and deemed each of her claims, which he understood as false arrest, malicious prosecution, and collusion and conspiracy, to be meritless. The motion justice

disposed of the false-arrest claim as he found that no arrest had occurred.[5] He also found that the malicious-prosecution claim turned on whether a prosecution was obtained without probable cause and reasoned that plaintiff's willful-trespass conviction "conclusively establishe[d]" the requisite probable cause, which resolved this claim as a matter of law. Finally, the motion justice noted that he had never heard of a claim for "collusion and conspiracy"; but, assuming that such a claim existed, he held that collateral estoppel barred it because it intermingled with the events underlying plaintiff's trespass charge, for which she was tried and convicted.

On appeal, plaintiff urges the reversal of the motion justice's grant of summary judgment. She argues that a genuine issue of material fact exists on her claim of "[c]ollusion and [c]onspiracy" because she offered "specific, admissible facts in the records, through documentation and affidavits" that constitute prima facie evidence on this issue. In her papers before us, plaintiff, in spite of the above-mentioned affidavit, describes the catalyst of her claim to be a scheme by Lerner to "set [her] up" and "keep her out" of the center. She asserts that Lerner discovered that plaintiff knew of Medicare fraud occurring under his supervision.[6] She contends that this led Lerner to retaliate by persuading Officer Desisto and other department officers to ban Bainum from the center. Beyond conspiracy, plaintiff challenges the motion justice's consideration of collateral estoppel in his grant of summary judgment.[7]

---

[5] During the motion justice's ruling from the bench, plaintiff interjected that she "never claimed false arrest."

[6] Appended to plaintiff's prebriefing statement is an article from the Hartford Business Journal that explains Lerner's role at other nursing homes in "lying to obtain nearly $1.5 million in state Medicare payments to cover business debts and improvements to his luxury homes."

[7] Additionally, plaintiff, for the first time at oral argument, asserted what she described as a violation of her right to associate or "gather" under the First Amendment to the United States Constitution because she was blocked from visiting Koczan. Beyond this claim lacking merit, the raise-or-waive rule forecloses our consideration of it.

- 4 -

## II

## Standard of Review

We review the grant of summary judgment <u>de novo</u>, utilizing standards identical to those used by the motion justice, while examining the evidence from a vantage point most favorable to the nonmovant. <u>Providence Journal Co. v. Rhode Island Department of Public Safety ex rel. Kilmartin</u>, 136 A.3d 1168, 1172-73 (R.I. 2016). "Summary judgment is appropriate when no genuine issue of material fact is evident from the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any, and the motion justice finds that the moving party is entitled to prevail as a matter of law." <u>Id.</u> at 1173 (quoting <u>Beacon Mutual Insurance Co. v. Spino Brothers Inc.</u>, 11 A.3d 645, 648 (R.I. 2011)).

## III

## Discussion

At the outset, we consider plaintiff's claim of "collusion and conspiracy." Rather than an independent source of liability, civil conspiracy is a vehicle for demonstrating joint liability for distinct tortious behavior; and, as such, plaintiff must set forth "a valid underlying intentional tort theory." <u>Read & Lundy, Inc. v. Washington Trust Co. of Westerly</u>, 840 A.2d 1099, 1102 (R.I. 2004) (quoting <u>Guilbeault v. R.J. Reynolds Tobacco Co.</u>, 84 F. Supp. 2d 263, 268 (D.R.I. 2000)). Although plaintiff does not expressly articulate an underlying tort theory, we glean the underlying tort of malicious prosecution from her papers.[8]

---

[8] Despite plaintiff's puzzling assertion at oral argument that she has not raised a malicious-prosecution claim, we will proceed with analyzing this tort because malicious prosecution is the only possible claim we can perceive from the record. For example, in her complaint, she alleges that her willful-trespass conviction stemmed from "malicious acts by the Coventry Police Dept." The plaintiff also highlighted what she described as "[t]he perjured testimony of Ryan Desisto, along with other intentional malicious acts by him and other employees of the Coventry Police Department, [which] were intended to harm the Plaintiff, and they did."

- 5 -

Malicious prosecution requires proof that the defendants (1) commenced a prior criminal case against the plaintiff, (2) lacked probable cause to bring such a proceeding, (3) maliciously commenced it, and (4) the prior proceeding closed in favor of the plaintiff. Hill v. Rhode Island State Employees' Retirement Board, 935 A.2d 608, 613 (R.I. 2007). Because we have traditionally frowned upon malicious-prosecution actions based on their likelihood of deterring the prosecution of criminal offenses, a plaintiff bears a heightened burden of proof: "'clear proof' of malice and lack of probable cause." Id. (quoting Soares v. Ann & Hope of Rhode Island, Inc., 637 A.2d 339, 345 (R.I. 1994)). Here, plaintiff's claim is easily disposed of as a matter of law because proof of a criminal conviction conclusively establishes evidence of probable cause. See Horton v. Portsmouth Police Department, 22 A.3d 1115, 1123 (R.I. 2011) ("When probable cause exists to initiate a proceeding, a claim of malicious prosecution must fail * * * ."); Dyson v. City of Pawtucket, 670 A.2d 233, 239 (R.I. 1996).

Further, the plaintiff's malicious-prosecution claim fails under the fourth element, which requires that the criminal proceeding terminated in the plaintiff's favor. Here, the plaintiff's criminal willful-trespass conviction clearly demonstrates that the prior proceeding did not terminate in her favor. See Heck v. Humphrey, 512 U.S. 477, 484 (1994) ("One element that must be alleged and proved in a malicious prosecution action is termination of the prior criminal proceeding in favor of the accused."); Horton, 22 A.3d at 1123 n.8. Because the underlying malicious-prosecution claim fails as a matter of law, the plaintiff's civil-conspiracy claim must also fail; and, accordingly, our de novo review leads us to conclude that summary judgment was proper.

**IV**

**Conclusion**

For the aforementioned reasons,[9] the judgment of the Superior Court is affirmed. The record in this case shall be remanded to that court.

Justice Flaherty did not participate.

---

[9] We, too, appreciate plaintiff's own suggestion at oral argument that this case could have been disposed of immediately because of her failure to join a proper-party defendant. In accord with this Court's holding in Peters v. Jim Walter Door Sales of Tampa, Inc., 525 A.2d 46, 47 (R.I. 1987), the proper defendant would have been the Town of Coventry, rather than the department, a subdivision of the municipality.

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

## SUPREME COURT – CLERK'S OFFICE

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Carel Bainum v. Coventry Police Department. |
| **Case Number** | No. 2016-41-Appeal.<br>(KC 13-878) |
| **Date Opinion Filed** | March 27, 2017 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, and Indeglia, JJ. |
| **Written By** | Associate Justice Gilbert V. Indeglia |
| **Source of Appeal** | Kent County Superior Court |
| **Judicial Officer From Lower Court** | Associate Justice Bennett R. Gallo |
| **Attorney(s) on Appeal** | For Plaintiff:<br><br>Carel Bainum, Pro Se |
| | For Defendant:<br><br>Michael DeSisto, Esq. |